Good afternoon, Your Honors. I'm Richard Weinstock. I'm the attorney for the appellant in this case. My name is Richard Weinstock and I would like to start by acknowledging what the attorney for the appellant plaintiff said in the last case. We don't want to be under ERISA. I heard her say, I'm paraphrasing, nobody wants to be under ERISA. Maybe this case presents a good reason why that is so. In this place, employees are told they're receiving a vacation benefit, vacation pay. It's all over the literature. It's in the vacation trust booklet. It's in the summary plan description for the vacation trust. It's on the statements that the construction laborers are given periodically when they are told what their benefits are. It's in the collective bargaining agreement. In fact, it's on the pay stubs that they receive. So we have a briefs where the Department of Labor is empowered to say what an hour of service is. Department of Labor comes out with a ruling saying an hour of service includes vacation pay. All of a sudden, we have the defendants in this case, the This is an involuntary savings plan, much like a Christmas club program. It's I think that kind of flexibility, running for cover, that has ERISA as, well, maybe it's not to be good under. It could have been handled through the collective bargaining agreement, could it not? You mean as far as whether vacation pay? Yes, it could have been handled. I acknowledge that. It could have been, but the history of particularly this particular plan or this particular union, they have a history in the Ponce case, which was cited in the brief, of really not covering the benefits or covering forfeitures in their sort of lower end employees. The employees who don't quite make a thousand hours to be recognized in terms of getting a year of benefit credit. That's one way it could have been handled, but it wasn't. In fact, that's why ERISA came into being. Everything really could have been handled through collective bargaining. That really didn't work. For example, the Ponce case that this particular defendant was involved in, that involved collective bargaining, but it was found to be, it did not protect workers sufficiently. And therefore, ERISA was passed so that there would be some bright line, hard edge rules to prevent forfeitures such as occurred in this case. I would like to just add two other sub-arguments that are not covered in the brief. I went through the briefs, and it seems a lot of it has been covered very thoroughly. One is the defendant's contention that there is a, this is really nothing more than an involuntary savings plan like a Christmas club. I just would like to add to that, well, in those kinds of plans, when Christmas comes around, you don't have to take the money out. So in a plan like this, you get the money. I mean, so it's clearly something different than Christmas club. The second point I'd like to make is the, that's really not quite covered, is in the, the defendant makes the argument that payroll taxes, well, the payroll taxes were paid at the time that the employee received a paycheck. But you'll notice that the Department of Labor Regulation makes no reference whatever to payroll taxes, although they could have. So it seems to me relatively clear that not having said anything about payroll taxes, it's really not an important issue as far as the Department of Labor Regulation goes. I'll conclude this part of the argument and reserve time for rebuttal simply by saying that I respectfully submit that the court simply tells the defendant, in this case, the appellee, that its plans should mean what they say they mean, vacation pay, and that the plaintiffs, the appellee, appellants, and the class should get credit for that. Thank you. Good afternoon. May it please the court, John Miller, Cox Castle and Nicholson on behalf of the Construction Laborers Pension Trust for Southern California. It's very easy to stand up here and castigate the industry for not having provided pensions more in line with what the Plaintiffs' Council would appreciate. It's another matter to provide those in the real world, in a competitive world where your competitors don't have the obligations to provide pensions, don't have the obligations to provide vacations, and unions negotiate on behalf of their members to impose what benefits they can get for those in this fashion, a spendthrift trust where the money is treated as taxable to the employee for the hour worked. He then gets it back sometime later out of the distribution from the vacation trust. We didn't do this all of a sudden. This was in place in 1966. That's what the IRS said it was. It's the employee's contribution. It is not the employer's contribution. And when ERISA came into effect, it said nothing about this issue. It left to the Department of Labor the task of defining what the vacation, what the hours of service are, and it was the Department of Labor who issued these regulations. And for 30 years, nobody has challenged this interpretation in this plan or in the other plans around the country that represent tens of thousands of employees and thousands of employers. And the industry has, as the brief of the National Coordinating Committee for Multi-Employer Plans sets forth in great detail, the industry has relied on the characterization that the unions have applied to these benefits. Mr. Miller, one thing I'm not quite sure of, if Mr. Moore actually takes two weeks vacation, how does that count in terms of service? Well, if he takes vacation and his employer gives him vacation, and in Southern California, because of the temperate weather, there are employers who employ construction laborers year-round, regular crews, and they will actually, on an individual basis, give vacations and pay for those vacations. And when they pay for those vacations, they are obligated to make a contribution to the pension trust for that hour of vacation time, and the pension trust credits that hour of vacation time. In the case of... No, it counts against the thousand hours. Pardon? It counts against the thousand hours. Yes, it's an hour worked or paid, so if the hour was paid... Supposing he just said, I'm going to take two weeks vacation, and there wasn't any... He gets nothing because employers are not obligated to provide vacations, and short-term employees historically didn't get vacations. For decades, you had to work a year before you were ever entitled to any vacation on a full-time basis with an employer, if that employer happened to be somebody who gave you a vacation. You're arguing the practice and so forth of the industry, but when you confront it for the first time, you do encounter this terminology that calls it vacation pay, and you might think that when you took a two-weeks vacation on your own, I'm going to draw in my vacation pay. But you don't, because it doesn't get paid out at that time. It gets paid out at a set time each year. Okay, you've got it in June, and you say, gosh, I've got my vacation pay. In August, I'm going to take two weeks off, and I'm going to use this vacation pay. And maybe you do. And why isn't it? Because it was your savings account to put money away. As the declaration of Michael Cavato in the record discusses, and he's the head of the Southern California District Council of Laborers, the union, it was the union who asked for the account in negotiations, and it is the union who determines how much money gets put into that account. The union is the representative of Mr. Mora and his people. He has benefited from the union representing him. He doesn't want to be burdened by the policy choices that they made, and the policy choice they made was we're going to create this set-aside account so that guys will have some money on hand that they get once a year, and sometimes it's been twice a year through the history of it, where they will get a distribution, and we call it a vacation because that's how we used it in negotiations. But it never meant that the employer was providing anybody a vacation. It was that the union had this spendthrift savings account, which in trust terms is what it is, where the money is the employee's money and it gets parked in a trust. Well, why not just give the money to the employee, begin with? That's a matter for the unions, between the union and their members. I mean, I can tell you that if the rule were as Mr. Weinstock proposes, there probably wouldn't be a vacation contribution because the employers would say, the employers since 1980 have strictly limited the ability of the pension trust to control, to create liabilities. They certainly, prior to 1980, all the way from the inception of the plan, the employers paid great attention to what the liabilities were that the pension trust was promising because they're responsible for those. And the vacation trust is not something that they've ever been concerned about. It fills up every year. It gets emptied. If the union wants to put money in there, fine. If the union wants to put it on the paycheck, fine. They don't care. It's of no consequence. Today, Mr. Mora asks for it to be a $100 million consequence. And it simply was never the case. Now, he's argued, by the way, and I wanted to address this, that the estimates of the actuary are incorrect on the damages liability. Well, the money comes from the employee's wages. In the vacation trust, yes. And that's the distinction between, if you look at the Department of Labor regulations, every example of the Department of Labor as to what does, as to when something is treated as vacation pay for which an hour of service must be awarded, every one of those has a taxable event at the time of receipt, not at the time the hour was worked that generated the wage. And in this case, that's exactly the case. He was taxed on it at the time that he worked the hour. It was compensation for that hour. In mid-contract, a three-year union negotiation, in mid-contract, if the union wants to take money out of there and put it back on the wage, they've done that over the years. If they want to take money out of the wage and put it in the vacation, they've done that over the years. So it's always been the employee, through his representative, who decided how much he put in his Christmas club. And that's basically what it is. It is a Christmas club account. However you dress it up in name, it is not a vacation benefit in the sense of somebody being paid for taking vacation time. Let's assume that the collective bargaining agreement had specified that it was to be treated that way. Would that change? It would be treated as? In other words, that the pro rata, whatever the hours worked out to be on a pro rata basis, that that would count as credit earned against the 1,000 hours eligibility. Would that be a permissible feature of a collective bargaining agreement that would be binding or not? Well, it would be binding if the parties agreed to it. Yes, absolutely it would be binding. And there are plans, there are pension plans around the country that have less than 1,000 hours as the cutoff. But that's part of the problem here because they've done that over time at a glacial pace as they could determine that their funding could handle it. And in exchange for giving a lowered eligibility requirement on the number of hours, they don't give as high a benefit or they do, you know, they make some other adjustment so that they are able to come up with something that works that they can pay for. Let me put my question another way. If the parties had agreed on such a plan for how hours were to be credited, you don't see anything in the Department of Labor regulations or the language of ERISA that would prevent them from treating something paid under a vacation trust as a creditable hour. No, I do not. And, in fact, in the record. Your argument is that this plan doesn't do that. That's right. And in the record there is a reference to a maritime plan that does that as a result of a 1955 arbitration award and the practice of those bargaining parties afterwards. They don't have to credit vacation that way. They just do it that way. And this agreement is silent on how those hours are to be treated, right? Well, no, I don't agree that that's the case. The trust agreement says it's the employee's contribution, not the employer's, and the practice has been consistent since it was created. Yeah, I understand that. Okay. Well, I guess what my question is, and maybe you weren't communicating earlier, is if you had a collective bargaining agreement such as yours, which prints plainly the employee's contribution and not the employer's contribution, but the parties agreed that it was going to receive certain credits, whether it's 1,000 hours, 800 hours, whatever, toward eligibility for plan benefits of any type, your view is that the parties could do that and it would be permissible under the Department of Labor regulations, even if the employee was the sole person making the contribution? Well, yes, for this reason. Employees are not allowed to make contributions into this plan, but under the law you can do that. So there would be the issue. I'm not sure that if you did it that way that the parties, with the advice of counsel, would still treat it as the employee contribution, they might fund it a different way, because there are consequences to having the employee self-contribute to a plan that kind of can complicate the administration of the plan. Well, I guess what I'm getting at is that your argument is essentially that, look, you ask us to look beyond the label into what the reality of the payments are and how they're withheld and how they're paid out. But if I understand your answer correctly, and I know I'm just giving a hypothetical, that even though we have that label that the mechanics are there, if the parties agreed to put a different label on it and accept the collateral consequences, they could do that. They could do that, yes. And this plan is silent as to that issue. They could do it, but I'm not sure that they could do it in the way that we did this plan. In other words, they might treat it from a regulatory standpoint, they might contribute the money in a different way than the way this plan is structured. Right, but I guess that's what I started the initial question is, if you took your plan and the parties just said, well, we're going to ignore the labels and treat this as a creditable hour, could they do that on the regulations? And you seem to be backing off your earlier answer. Well, it's not that I'm backing off. It's that I'm qualifying how they do it. And if you'd like for me to address that post-argument in a brief, I'd be happy to do that, because I can explain what the tax law issues are that get caught up in that. Part of the hypothetical is that the parties agreed to assume whatever collateral consequences that might have. The reason for my question is, if you can't label it and this plan is silent, then it's not impermissible. We just have to look at the plan and see what it does and see what the construct is, right? Well, except that the issue in the regulation is, is this payment for the hour worked? And we believe that with this structure, it is very clearly for the hour worked. To have this kind of contribution count toward something that you would give credit on, you'd need to restructure it so that it was clearly not for this hour worked. It would be a separate payment on account of the hour that is going to be taken off at some future time. And actually, there's some other ways to do it. Right. I understand what you're answering is how you could do it. My question is, if you took your structure and just the parties decided to put a different label on it with that past semester? As precisely structured here? No, I don't believe so, because it's the employees' money at that point. Now, just to touch quickly, the plaintiff suggests we've double counted on the 1.2 and the 2.1. The money comes from the employer. The employer pays a wage. The way they make an allocation. The union makes the allocation, right. But the employer says, I want to pay for the, I'm going to pay this. I have this available to pay in wages. And the union says, okay, we'll take this amount in wages, and we're going to count this, and we're going to deposit this in the vacation account. And then mid-contract, they change it around if they decide they want to do that. It was all intended to be wages right at the start. It taxed that way. To take part of it and label it vacation benefits, and then to tack that on to the number of hours worked. Was never intended. Never intended. Right. And had it been, there would have been a whole different set of calculations year after year after year after year. The net result is that short-term construction workers don't get a vacation benefit in the same way that long-term construction workers. Correct. Correct. And if you're a non-union construction worker, you get even less than that. Well, if you're a union construction worker, you go out of a hiring hall. That's the way they get their jobs. Am I right about that? That's yes and no. As the years go by, that kind of evolves. It's less controlled like that than it used to be. But the average hours reported to the pension plan, 1,000 gets you a year's credit. The average hours are up around 1,500 a year. And vesting now is down to five. You know, I do take great exception to the Ponce case being alleged as constituting, as this trust, as the collective bargaining parties mistreating anybody in the bargaining unit. All pension plans in the early days started out with very lengthy vesting because you were phasing in benefits to people who had worked in a workforce that had no contribution come in on them. By contributions coming in on current people, and you could only, there wasn't a big enough pie to really do something. And that was all a choice, again, that was a political decision among the union and its members, of which Mr. Mora was one. And they came to the bargaining table with that structure, and the employers worked with them to fund those plans. So, sure, in the early years, the qualifications were harsh. They had, you know, this plan had promised $800 million worth of benefits at a time when it had $200 million in the bank. So you can't do a whole lot with that. Now, as the years have gone by, has it followed the changes in the law? Of course. It's not just that the law did it, though. I mean, those vesting periods would have come down. It's that the funding mechanisms got into place so that benefits could be offered. And certainly no union is going to want to disadvantage a majority of its members. So I just, you know, that's just an improper analysis of what the legal issues were back in those days. All right. Thank you. Thank you. I would just say we disagree on the damages where he alleges that we've double counted it. The actuaries report does not double count. It is separate numbers, and it does come out to $100 million in liability. Your Honor, I think when construction counters file a case of this nature, they're not in a position to spend a lot of money on actuaries and counter what the defendants claim to be the sums here. I think in the brief I've done a thorough job of discounting that. But the bottom line in a situation really like this is that pension plans are really nothing other than taking, often taking from Peter to pay Paul. It won't cost the pension plan anything. All it really means is that the funds will have to be reallocated. If the court were to go the plaintiff's way on this, the appellant's way, then really all that means is that Maura and people like him will get more money, and that people who down the road who are receiving their pensions may get a little less money at the same rate of contribution that now exists. So that's really what a pension plan amounts to. Now, maybe they won't like that, and maybe they feel that they will have to raise the contribution by the employers. Maybe. Who knows? The second point I'd like to make is that whether you call this a Christmas Club involuntary savings plan or you call this a vacation benefit, it is not just a label. It's not a label in something like this. Employers want to be able to attract construction laborers by saying, hey, we have a vacation benefit. We have a vacation plan here. Just like other employers, we have a vacation plan here. How would it look if they put on the literature, well, we're paying you, you know, $18 an hour, plus we're giving you an involuntary Christmas Club program under which we're going to take money out of your wages and we're going to put it into a club, and come June or July or December, we're going to pay that money back to you. And guess what? No interest. There's not going to be any interest on it. And if you read the trust, the trust also says that in some cases you won't get it back if it's a diminishing amount, such as maybe $15, maybe you won't get it back. But it's not exactly what happens. The wages are withheld, put into a trust, and it's distributed under a formula. And you may or may not get anything, but it's a deduction from wages. It's not an added benefit from the employer. But that is the idea of it being a deduction from the employer. That's the way it is shown on the check as a deduction. And granted that that is the way that it was set up. But nonetheless, the contribution comes from the employer. It's an employer contribution, like it or not. The fact that it ends up on a pay stub, and then the formality is it's put into something called a vacation trust, does not change the fact that it is an employer contribution. The employee has really no say so. In fact, it's somewhat patronizing, I think, to tell construction laborers, you guys can't save any money, so we're just going to withhold it for you and pay it at a different time of year. It's something the union bargained for. Well, the union bargained for it, but it did call it a vacation plan. And it then represented to the employees, hey, you have a vacation plan here. And that employees would find attractive until they find out that, well, but it's not going to be treated like other vacation plans. It's going to be treated in a different way. It's going to be treated in such a way that unlike other employees, you're not going to get a pension credit for these funds. That isn't specifically in the contract. It might be implied when you read the contract, but it doesn't specifically say employee, this vacation benefit is totally non-comitable against any pension. So I think it does make a big difference how you label something in a case like this. What percentage of the laborers have steady jobs with a particular employer? My experience is, and especially if you look at Mr. Mora, that's very common. They do not have steady jobs. They end up with many years in which they have earned, say, 500 or 600, 700 hours of credit, and they get no credit for that toward their pension because it falls below the ERISA 1,000-hour minimum. How many employers does Mora work for? I don't have the information at hand, but I would say that he probably worked for maybe 80 or 90 employers during his career. At least from my experience, and I've done quite a number of construction labor cases, the average employee is working during his lifetime for easily 80 or 90, 100 employers often. This kind of a plan works to the benefit of the employer. It's a multi-employer plan because it enables them to give a pension, for example, that an individual employer might not be able to do. It enables them to give a vacation benefit, which an individual employer might not be able to do. The fact that they give a vacation benefit seems it should follow from that that they're going to receive some pension credit just like everybody else. Except that those workers who work for one company and actually do get a vacation get to count all that vacation time as hours worked. Plus, under your theory, they would get all of their contributions from the vacation trust. No, they wouldn't. We don't represent those employers. But if you interpret vacation trust payments as being equivalent to vacation, why wouldn't they get those additional time? You'd have to interpret it uniformly, wouldn't you? No, because it seems to me that the Department of Labor regulation specifically says, wait a minute, you can't do double counting here. It would seem to me the Department of Labor regulation would end up, in effect, being interpreted or saying directly, if you got vacation as a regular employer, as a long-term employer of a company, that you couldn't get credit for this vacation because you'd already gotten credit. It's a double counting issue. Why is it a double counting issue? I don't understand how it can be a double counting issue. What it is is an extra vacation. Let's say the employer gives two weeks of vacation. Why, under your theory, if they had a vacation trust, couldn't the employee say, well, I was entitled to four weeks or six weeks? Because that's the equivalent based on the trust. Well, it might not be double counting. I will concede that it might not be. But in the term of the long-term employee, he may work, let's say, for an employer for an entire year, let's say. Let me give you that example of an employee who works, a long-term employee, works the entire year, gets his two weeks vacation, and then gets an additional payment from the vacation trust. That would be a double counting situation. I would concede that it would be. The other problem with that analysis, I think, here is that, remember, if you studied the plan documents, you don't get any more credit than $1,000 or, at the most, $1,200. You only get credit up to $1,200 for... Sure. Pardon? Yeah, I understand that. You see where I'm going with that? And it still doesn't change the fact that if a person who's given real vacation gets to take this other vacation, too, if it doesn't exceed 1,200 hours and otherwise doesn't exceed any of the regulations. And that seems inconsistent to me. Well, I don't think it is inconsistent because it's no more inconsistent than in a situation where an employer gives one employee a five-week vacation, and that employee gets five weeks of credits, benefit credits or vesting credits, and another employee only gets two weeks of vacation, maybe because they're in a different classification. Sure, and that's the way the chips fall. Right, right. That's correct. So all we're really saying is the short-term employee here, it should be given some vacation credit for this time that is designated vacation pay. Yeah, I understand your argument. I think the matter stands submitted. Thank you. We're going to take a five-minute break.
judges: Pregerson, Noonan, Thomas